UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| JESSIE E. JONES, # 260563, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:14-cv-1021 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| WENDY BRINKLEY, et al., ) | |
| ) | **MEMORANDUM OPINION** |
| Defendants. ) | |
| _____ ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C.
§ 1983.[1]  Plaintiff is an inmate held in the custody of the Michigan Department of
Corrections (MDOC) at the Central Michigan Correctional Facility.  (ECF No. 31).
Plaintiff filed his complaint on September 29, 2014.  His complaint arises out of
conditions of his confinement in 2013 and 2014 at the Oaks Correctional Facility
(ECF).  The defendants are Assistant Resident Unit Supervisor (ARUS) Wendy
Brinkley, Corrections Officers Steven Hulet, Robert Zwiefka, Michael Shelley, Timothy
Sutter, Grievance Coordinator Todd Bassett (collectively referred to herein as the
MDOC defendants), and Aramark Food Supervisors Stephanie Torras and Joanne

---

[1]Plaintiff is a prolific litigant.  In light of his history of bringing lawsuits that
have been dismissed on grounds that they were frivolous, malicious, or failed to
state a claim on which relief could be granted, plaintiff was generally precluded
under the "three-strikes rule" of 28 U.S.C. § 1915(g) from proceeding *in forma
pauperis* as of the date he filed this lawsuit.  *See, e.g.*, *Jones v. Napel, et al.*, No.
2:13-cv-282 (W.D. Mich. 2013).  Here, plaintiff was apparently allowed to proceed *in
forma pauperis* in October 2014 (*see* ECF No. 3) based on his representations that
he was under imminent danger of serious physical injury.  (ECF No. 1, PageID.4-8).

French.

Plaintiff alleges that defendants Hulet, Zwiefka, Brinkley, Bassett, French and Torras violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause by their failure to protect plaintiff. Plaintiff alleges that on some unspecified date after October 2013, an unidentified prisoner punched him in the face. This individual purportedly told plaintiff that "Brinkley, Hulet, Bassett [and] Zwiefka, said that [plaintiff] was a rat." (Compl. ¶ IV, ECF No. 1, PageID.4-5, 8). Plaintiff alleges that Torras and French told members of Torras's "gang" that plaintiff was "gay and a rat," and that as a result of these statements prison gang members have threatened to rape and kill plaintiff. (*Id.* at PageID.7-8).

Plaintiff alleges that defendants Brinkley, Hulet, Zwiefka, Torras, Bassett, Shelley, Sutter, and French "retaliated" against him in violation of his First Amendment rights.[2]

Defendant Hulet allegedly retaliated against plaintiff for filing of Grievance No. 13-11-2737-03H by confiscating a Pocket Guide for Prisoner Rule Violations, ten legal books, and trial transcripts, gave plaintiff a class 2 misconduct charge for possession of stolen property, and stated in front of other prisoners that plaintiff was a rat for filing Grievance No. 13-11-2737-03H. (Compl. at ¶ IV, PageID.4).

Defendant Zwiefka allegedly retaliated against plaintiff for filing Grievance No. 13-11-2797-03H, by confiscating items of clothing, stealing plaintiff's belt, and stating

---

[2]All other claims have been dismissed. (ECF No. 5, 6).

to other prisoners that plaintiff was a rat for filing Grievance No. 13-11-2797-03H. (Compl. at ¶ IV, PageID.4).

Defendant Bassett allegedly retaliated against plaintiff for filing Grievance No. 13-11-2796-19Z by writing a class 2 misconduct report and by stating to other prisoners that plaintiff was a rat for filing Grievance No. 13-11-2796-19Z. (Compl. at ¶ IV, PageID.5).

Defendant Brinkley allegedly retaliated against plaintiff for Grievance No. 13-11-2796-19Z and a hearing officer's decision by disposing of plaintiff's property and by telling other prisoners that plaintiff was a rat for filing Grievance No. 13-11-2796-19Z. (Compl. at ¶ IV, PageID.5).

Defendant Sutter allegedly retaliated against plaintiff for Grievance No. 14-03-953-15B by making "mendacious statements" which helped support a finding that plaintiff was guilty of misconduct and concluded in the termination of plaintiff's work assignment. (Compl. at ¶ IV, PageID.5).

Defendant Shelley allegedly retaliated against plaintiff for Grievance No. 14-03-953-15B by finding plaintiff guilty of a misconduct charge and sentencing plaintiff to a loss of privileges for ten days. Plaintiff states that he prevailed on his appeal of this misconduct conviction. (Compl. at ¶ IV, PageID.6). He alleges that Shelley conducted another hearing, found him guilty, sentenced him to loss of privileges for fifteen days, and that decision was overturned on appeal. (*Id.*).

Plaintiff's retaliation claims against the Aramark employees are not based on any purported resort to the MDOC's grievance process. Instead, plaintiff claims that

he filed a sexual harassment complaint against Ms. Torras which he believes resulted in her changing his work assignment and his being denied a pay increase. (Compl. at ¶ IV, PageID.6). "In reprisal defendant flashed her prison gang tattoo and told her prison gang members that plaintiff is a rat and to kill him." (*Id.* at PageID.7). Plaintiff alleges that he made a second complaint regarding Ms. Torras with Ms. French and that they wrote a mendacious misconduct report which resulted in plaintiff being terminated from his work assignment and told members of Torras's gang that plaintiff was gay and a rat. (*Id.*).

Plaintiff sues defendants in their individual and official capacities and seeks damages. (*Id.* at ¶ III, PageID.2 and ¶ V, PageID.9-10).

The matter is before the Court on a motion for partial summary judgment by defendants Brinkley, Bassett, Shelley, and Sutter[3] (ECF No. 18) and a motion for summary judgment by defendants Torras and French (ECF No. 22). Defendants' motions are based on the affirmative defense provided by 42 U.S.C. § 1997e(a). Plaintiff opposes defendants' motions. (ECF No. 21, 23, 25). For the reasons set forth herein, all plaintiff's claims against defendants Brinkley, Hulet, Zwiefka, Bassett, Shelley, and Sutter in their official capacities will be dismissed with prejudice because

---

[3]The Court has ignored the portion of defendants' motion which inaccurately suggests that defendants Hulet and Zwiefka are seeking summary judgment. (ECF No. 18, PageID.54). Defendants' brief (ECF No. 19) leaves no doubt that the motion for summary judgment by the MDOC defendants is limited to defendants Brinkley, Bassett, Shelley, and Sutter: "Only the claims against Defendants Hulet and Zweifka should proceed. Defendants Brinkley, Bassett, Shelley, and Sutter should be dismissed from this action." (*Id.* at PageID.71).

they are barred by Eleventh Amendment immunity.  The motion for partial summary judgment by defendants Brinkley, Bassett, Shelley, and Sutter (ECF No. 18) on plaintiff's claims for damages against them in their individual capacities based on the affirmative defense provided by 42 U.S.C. § 1997e(a) will be granted in part and denied in part.  All claims dismissed pursuant to the affirmative defense of lack of exhaustion will be dismissed without prejudice.  The motion will be granted as to all plaintiff's claims against defendant Bassett and all plaintiff's claims against defendant Brinkley other than his claim that defendant Brinkley retaliated against him for a hearing officer's decision by depriving him of a personal copy of the Pocket Guide to Prisoner Rule Violations.  Although that claim is exhausted, it is not a claim of constitutional dimension.  The one claim against defendant Brinkley that is not being dismissed for lack of exhaustion will be dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2).  The motion will be denied as to plaintiff's retaliation claims defendants Shelley and Sutter because the defendants did not carry their burden on the affirmative defense.  The motion for summary judgment by defendants Torras and French (ECF No. 22) will be granted and all plaintiff's claims against those defendants  will  be dismissed without prejudice.

**Applicable Standards**

**A.     Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862,

866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, No. 16-1876, __ F. App'x __, 2017 WL 384874, at * 4 (6th Cir. Jan. 27, 2017).  The motion for summary

-6-

judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270

F.2d at 1056.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B.    Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants Brinkley, Bassett, Shelley, Sutter, Torras, and French have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile."  *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion

in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the

applicable grievance procedures.[4]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution.  *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms:   "The issues should be stated briefly but concisely.  Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not

---

[4]A copy of the policy directive is found in the record.  *See* ECF No. 19-2, PageID.74-80.

properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at *
16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F.
App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who
makes an initial determination whether it should be rejected under MDOC policy or
assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied
with the Step I response, or does not receive a timely response, he may appeal to Step
II by obtaining an appeal form within ten business days of the response, or if no
response was received, within ten business days after the response was due. *Id.* at ¶
BB. The respondent at Step II is designated by the policy. The Step II respondent is
generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is
dissatisfied with the Step II response, or does not receive a timely Step II response, he
may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal
form must be sent to the Grievance and Appeals Section within ten business days after
receiving the Step II response, or if no Step II response was received, within ten
business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance
and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall
be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S.
"The total grievance process from the point of filing a Step I grievance to providing a
Step III response shall generally be completed within 120 calendar days unless an
extension has been approved in writing." *Id.*

-11-

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Facts

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on his criminal convictions. He is currently am inmate at the Central Michigan Correctional Facility. (ECF No. 31). His complaint arises out of conditions of his confinement in 2013 and 2014 at the Oaks Correctional Facility (ECF). Plaintiff named six MDOC employees at ECF as defendants: Assistant Resident Unit Supervisor (ARUS) Wendy Brinkley and Corrections Officers Steven Hulet, Robert Zwiefka, Michael Shelley, Timothy Sutter and Grievance Coordinator Todd Bassett. Plaintiff also named two Aramark employees as defendants: Food Supervisors Stephanie Torras and Joanne French.

-12-

Plaintiff pursued a number of grievances through a Step III decision before filing this lawsuit on September 29, 2014.  The vast majority of plaintiff's grievances are unrelated to any claim at issue in this lawsuit.  (*See* ECF No. 19-3, PageID.82-109,125-29,137-41; ECF No. 19-4, PageID.142-218; ECF No. 19-5, PageID.219-85; ECF No. 19-6, PageID.286-313).  Four grievances warrant further discussion.

1.    ECF-13-11-2796-19z

On November 12, 2013, ECF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ECF-13-11-2796-19z.  Plaintiff made the following complaint regarding actions purportedly taken by Corrections Officer Hulet:

> VIOLATION O.P. 04.07.112.  IN REPRISAL FOR CLIENT USING THE GRIEVANCE PROCESS.  C/O S. HULET CONFISCATED CLIENT'S ALLOWABLE EXCESS LEGAL PROPERTY, WHICH WERE (1) POCKET GUIDE FOR PRISONER RULE VIOLATION; AND MALICIOUSLY DESTROYED CLIENT'S SELF-HELP LITIGATION MANUAL, INTRODUCTION TO LAW BOOK, PRISONER LITIGATION IN THE U.S. COURT'S, MICHIGAN COURT RULES, DEFENDER'S MOTION HANDBOOK, OFFENDER TRIAL HANDBOOK, AND TWO COPIES OF CLIENT'S TRIAL TRANSCRIPT'S, IN DOING SO, STATED THAT CLIENT IS AN INFORMANT. RESOLUTION: RETURN CLIENT'S ALLOWABLE EXCESS PROPERTY (1) POCKET GUIDE FOR PRISONER RULE VIOLATION.  PAY CLIENT $45 FOR THE SELF-LITIGATION MANUAL, $25 FOR INTRODUCTION TO LAW BOOK, $25 FOR PRISONER LITIGATION IN THE U.S. COURTS, $60 FOR MICHIGAN COURT RULES, $45 FOR DEFENDER'S MOTION HANDBOOK, $45 OFFENDER TRIAL HANDBOOK, $2,500 FOR TWO COPIES OF TRIAL TRANSCRIPT'S, AND $25,000 FOR THE RETALIATORY ACT.

(ECF No. 19-3, PageID.117).

Plaintiff's grievance was denied at Step I.  Corrections Office Hulet conducted a search of plaintiff's cell looking for contraband.  He did not destroy or damage plaintiff's property.  The damage to the books appeared to be ordinary wear and tear.

Hulet denied labeling plaintiff as an informant.  (*Id.* at PageID.118).

On November 8, 2013, plaintiff had been found in possession of the Pocket Guide for Prisoner Rule Violations.  On November 8, 2013, Corrections Officer Hulet issued a contraband removal record.  (ECF No. 19-3, PageID.121).  Plaintiff had received a class III misconduct for possession of contraband.  Officer Bassett was the author of the misconduct report.  He described plaintiff's rule violation as follows: "Prisoner Jones was found to be in possession of one (1) 'Pocket Guide for Prisoner Rule Violations'. This pocket guide is not available for prisoners to purchase or possess.  Further, the pocket guide is altered (staff signature page missing, front cover ripped, possibly to remove the rightful owner's (staff) name).  Based on the above, the pocket guide is considered contraband."  (*Id.* at PageID.119-20).

Plaintiff's grievance appeal was denied at Step II.  Plaintiff's allegations against Officer Hulet could not be substantiated.  (*Id.* at PageID.116).  The Step II decision was upheld at Step III.  (*Id.* at PageID.114).

Defendant Hulet does not claim entitlement to dismissal of plaintiff's First Amendment retaliation claim and Eighth Amendment claim against him on the basis of the affirmative defense provided by section 1997e(a).  (ECF No. 19, PageID.68, 70-71).

> 2.    ECF-13-11-2797-19Z

On November 12, 2013, ECF's grievance coordinator received a grievance from plaintiff and assigned it Grievance Number ECF-13-11-2797-19Z.  Plaintiff made the following complaint regarding Officer Zwiefka's actions on November 8, 2013:

VIOLATION PD 04.07.110.  IN REPRISAL , C/O ZWIEFKA ENTER CLIENT'S ASSIGN CELL AND MALICIOUSLY TOOK CLIENT'S ALLOWABLE STATE ISSUE QUARTERMASTER CLOTHING, SUCH AS, 1 PAIR OF PANTS, 1 STATE SHIRT, 3 T-SHIRTS, 1 PAIR OF SHORTS.  IN DOING SO ZWIEFKA STOLE CLAIMANT'S BELT AND LABEL HIM AS AN INFORMANT. RESOLUTION: ALLOWABLE QUARTERMASTER, PAY CLIENT $500 FOR THE BELT AND $25,000 FOR THE REPRISAL.

(ECF No. 19-3, PageID.133).

On November 8, 2013, during a pack up of plaintiff's property he was issued a notice of intent to conduct an administrative hearing regarding a few items of excess property.  (ECF No. 19-3, PageID.136).  Plaintiff later received a hearing.  ARUS Brinkley determined that the extra items had been approved by the property room officer and had been marked with plaintiff's prisoner identification number.  Brinkley directed that the items were to be returned to plaintiff.  (*Id.* at PageID.135).

Plaintiff's grievance was denied at Step I.  (*Id.* at PageID.134).  Plaintiff pursued an appeal to Step II.  He stated that the issue that he had been grieving was Officer Zwiefka's labeling him as an informant.  (*Id.* at PageID.131).  The warden's Step II response noted that the property had been returned to plaintiff.  Plaintiff failed to provide any factual information as to how Zwiefka had labeled him as an informant. The Step I decision was upheld at Step II.  (*Id.* at PageID.132).  The Grievance and Appeals Section issued a Step III decision which upheld the Step II decision.  (*Id.* at PageID.130).

Defendant Zwiefka does not claim entitlement to dismissal of plaintiff's First Amendment retaliation claim and Eighth Amendment claim against him on the basis of the affirmative defense provided by section 1997e(a).  (ECF No. 19, PageID.68, 70-

71).

      3.   <u>ECF 13-12-3046-28a</u>

On December 11, 2013, ECF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. 13-12-3046-28A. (ECF No. 19-3, PageID.113). Plaintiff made the following complaint against defendants Brinkley, Bassett, and non-party Curtin for withholding the Pocket Guide to Prisoner Rule Violations allegedly in retaliation for a hearing officer's decision that had authorized plaintiff to possess this pamphlet. Plaintiff's grievance is set forth verbatim below:

> VIOLATION OF PD 04.07.112.(EE); O.P. 04.07.112, IN REPRISAL FOR THE SOAHR HEARING OFFICER DECISION THAT AUTHORIZED THIS CLIENT TO POSSESS (1) POCKET GUIDE TO PRISONER RULE VIOLATIONS, ARUS WENDY BRINKLEY, GRIEVANCE COORDINATOR TODD BASSETT, WARDEN C. CURTIN HAS AN CONTINUES TO WITHHOLD CLIENT'S ALLOWABLE EXCESS, LEGAL PROPERTY PURSUANT TO PARAGRAPH (EE). "AN AUTHORIZED PUBLICATION IS NOT CONSIDERED ALTERED SOLELY DUE TO PAGES OF THE PUBLICATION BEING REMOVED (E.G. PICTURES CUT OUT" RESOLUTION: FOR EACH NAMED DEFENDANT TO PAY CLIENT SEPARATE DAMAGES IN THE AMOUNT OF $50,000 ON THE ACCESS TO COURTS CLAIM, $50,000 ON THE RETALIATION CLAIM, $50,000 FOR THE PAIN AND SUFFERING. IF THE DEFENDANT'S CHOSE NOT TO ACCEPT THE TERMS OF THIS SETTLEMENT LITIGATION WILL BE SOUGHT. *PENDING LITIGATION*

(ECF No. 19-3, PageID.113). The grievance was rejected at Step I because it was considered a duplicate of plaintiff's Grievance No. ECF-13-11-2797-19z. (*Id.*).

Plaintiff stated his reason for appealing to Step II was that this grievance should not be considered duplicative of his earlier grievance because this was the first time he had filed a grievance against Brinkley, Bassett, and Curtain "for the withholding of client's allowable excess legal property and retaliation." (*Id.* at PageID.111). The

warden's Step II response noted that the Prisoner Rule Violation Guide is not routinely provided to prisoners.  In plaintiff's case, the guide was altered, thus considered contraband and a class III misconduct and a contraband removal slip were prepared. "The signature page where an employee would sign to acknowledge receipt of the pocket guide is missing, which would seem to suggest that a staff member signed for the guide and the page [was] removed and placed in the employee[']s personnel file. This would also suggest that you retained this pocket guide by other than legitimate means.  The pocket guide is state property and cannot be purchased by prisoners, however, photocopies are available in the library for review." (*Id.* at PageID.112).  The Step III decision upheld the Step II decision.  (*Id.* at PageID.110-12).

4.    ECF-14-05-1524-27a

On May 28, 2014, ECF's grievance coordinator received a grievance from plaintiff and it was assigned Grievance No. ECF-2014-05-1524-27A.  (ECF No. 23-1, PageID.335).  In this grievance, plaintiff complained that defendants Shelley and Sutter both made "mendacious statements" in a class 2 misconduct hearing report "in reprisal for using the grievance process" and to "cover up Aramark supervisor corruption." (*Id.*).  This grievance was rejected at Step I because it was a grievance regarding misconduct hearing issues.  The Step I response advised plaintiff that his "avenue of recourse [was] through the rehearing appeal process not through the grievance process." (*Id.* at PageID.337).

## Discussion

### I.    Eleventh Amendment Immunity

Plaintiff's claims for damages against the MDOC defendants in their official capacities are barred by Eleventh Amendment immunity.  The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).  A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012).  Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  Defendants Brinkley, Hulet, Zwiefka, Bassett, Shelley, and Sutter are entitled to dismissal with prejudice of plaintiff's claim for monetary damages against these defendants in their official capacities.

### II.    Exhaustion

Defendants Brinkley, Bassett, Shelley, Sutter, Torras and French have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered."  *Jones v. Bock*,

549 U.S. at 220.

A.    MDOC Defendants

Defendants Brinkley, Bassett, Shelley, Sutter claim that they are entitled to dismissal of all plaintiff's claims against them based on the affirmative defense provided by 42 U.S.C. 1997e(a).

1.    Brinkley and Bassett

Defendants argue that Grievance No. ECF-13-12-3046 against defendants Brinkley and Bassett (ECF No. 19-3, PageID.113) claimed a reprisal for a hearing officer's decision and that it did not properly exhaust any claim at issue in this case. (ECF No. 19, PageID.67). Defendants are correct that this grievance did not properly exhaust any claim that plaintiff is asserting against defendants against defendant Bassett. Further, this grievance did not exhaust plaintiff's Eighth Amendment claim against defendant Brinkley or his First Amendment claim of that defendant Brinkley retaliated against him for filing Grievance No. 13-11-2796-19Z.

Grievance No. ECF-13-12-3046 did exhaust one purported claim: a claim that defendant Brinkley retaliated against him for a hearing officer's decision by depriving plaintiff of a personal copy of the Pocket Guide to Prisoner Rule Violations.[5] (ECF No. 19-3, PageID.113; Compl. ¶ IV, ECF No. 1, PageID.5). Although that claim is

_____

[5]Although plaintiff alluded to unspecified allowable excess legal property (ECF No. 19-3, PageID.113), his grievance did not provide facts to provide defendant Brinkley with fair notice regarding any item beyond the Pocket Guide. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006); *see also LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009).

exhausted, it is not a claim of constitutional dimension. Even assuming protected conduct, the alleged deprivation of a personal copy of this pamphlet is not an action that would deter a person of ordinary firmness. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*). This purported retaliation claim against defendant Brinkley will be dismissed for failure to state a claim on which relief can be granted pursuant to statutory authority. *See* 28 U.S.C. § 1915(e)(2).

### 2. Shelley and Sutter

Defendants' initial brief did not address Grievance ECF-14-05-1524-27a against defendants Shelley and Sutter because that grievance had not been pursued through Step III. (ECF No. 19, PageID.66-70). Plaintiff argues that he exhausted his administrative remedies on his First Amendment retaliation claims against defendants Shelley and Sutter because Grievance No. ECF-14-05-1524-27a was rejected and the Step I response advised him that his avenue of recourse was through the rehearing appeal process, not through the grievance process. (ECF No. 21, PageID.316-17). Defendants Shelley and Sutter filed nothing in response to plaintiff's argument. They failed to present argument or evidence establishing that plaintiff failed to exhaust his "available recourse through the rehearing process." *See Richardson v. Bauman*, No. 2:12-cv-435, 2015 WL 5347557, at * 9 (W.D. Mich. Sept. 14, 2015). The Court finds that defendants Shelley and Sutter have not carried their burden on the affirmative defense provided by 42 U.S.C. § 1997e(a).

B. Aramark Defendants

Defendants Torras and French are correct that plaintiff did not pursue any grievance against them through a Step III decision before filing his complaint. (ECF No. 22 at PageID.326; ECF No. 24, PageID.343-46). Plaintiff argument that he named defendants Torras and French in Grievance No. 2014-05-1524-27a (ECF No. 23, 25) cannot withstand scrutiny and it requires little discussion. Defendants Torras and French are not mentioned anywhere on the face of the grievance. Plaintiff left half of the space provided on the form blank. (ECF No. 23-1, PageID.335). Plaintiff has generated a companion piece of paper on which the names of defendants French and Torras appear. (*Id.* at PageID.336). Defendants objected to this paper as an apparent fabrication. (ECF No. 24, PageID.343-46). There is no evidence before the Court that the challenged page, which among other things is in a significantly darker typeface, was ever filed with Grievance No. 2014-05-1524-27a. Plaintiff did not file any evidence, such as an affidavit or unsworn declaration under penalty of perjury, establishing that the appended page was filed with his grievance. The bare arguments presented in plaintiff's briefs (ECF No. 23, 25) do not suffice at the summary judgment stage. *See Bodman v. Aramark Corp.*, No. 14-14420, 2015 WL 3605069, at * 5 (E.D. Mich. June 5, 2015).

Plaintiff's argument that the MDOC's policy directive regarding grievances only applies to MDOC employees (ECF No. 23, PageID.333) fares no better. Plaintiff was required to properly exhaust his available administrative remedies against the non-MDOC defendants French and Torras. *See e.g., Davis v. Heyns*, 1:15-cv-19, 2016 WL

-21-

922789, at * 2-3 (W.D. Mich. Mar. 11, 2016); *Bodman v. Aramark Corp.*, 2015 WL
3605069, at * 3-5.

<u>Conclusion</u>

For the reasons set forth herein, all plaintiff's claims against defendants
Brinkley, Hulet, Zwiefka, Bassett, Shelley, and Sutter in their official capacities will
be dismissed with prejudice because they are barred by Eleventh Amendment
immunity. The motion for partial summary judgment by defendants Brinkley, Bassett,
Shelley, and Sutter (ECF No. 18) on plaintiff's claims for damages against them in
their individual capacities based on the affirmative defense provided by 42 U.S.C. §
1997e(a) will be granted in part and denied in part. All claims dismissed pursuant to
the affirmative defense of lack of exhaustion will be dismissed without prejudice. The
motion will be granted as to all plaintiff's claims against defendant Bassett and all
plaintiff's claims against defendant Brinkley other than his claim that defendant
Brinkley retaliated against him for a hearing officer's decision by depriving him of a
personal copy of the Pocket Guide to Prisoner Rule Violations. Although that claim is
exhausted, it is not a claim of constitutional dimension. The one claim against
defendant Brinkley that is not being dismissed for lack of exhaustion will be dismissed
for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §
1915(e)(2). The motion will be denied as to plaintiff's retaliation claims defendants
Shelley and Sutter because the defendants did not carry their burden on the
affirmative defense. The motion for summary judgment by defendants Torras and
French (ECF No. 22) will be granted and all plaintiff's claims against those defendants

will  be dismissed without prejudice.


Dated:  March 31, 2017                     /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           United States District Judge